## L. WITCZINSKI et al. vs. EVERMAN et al.

1. **MORTGAGES TO SECURE FUTURE ADVANCES:** *When valid.*
   A mortgage to secure future advances which, on its face, gives information as to the extent and purpose of the contract, so that a purchaser or junior creditor may, by an inspection of the record or by ordinary diligence, ascertain the extent of the incumbrance, will prevail over the supervening claim of such purchaser or creditor as to all advances made by the mortgagee within the terms of such mortgage, whether made before or after the claim of such purchaser or creditor arose.

2. **SAME:** *Requisites thereof.*
   It is not necessary for a mortgage to secure future advances to specify any particular or definite sum which it is to secure. It is not necessary for it to be so completely certain as to preclude the necessity of all extraneous inquiry. If it contains enough to show a contract that it is to stand as a security to the mortgagee for such indebtedness as may arise from future dealings between the parties, it is sufficient to put a purchaser or incumbrancer on inquiry; and if he fails to make it, he cannot claim protection as a *bona fide* purchaser.

3. **SAME:** *Registration acts. Effect thereof.*
   The law requires mortgages to be recorded for the protection of creditors and purchasers, and if it gives information that it is to stand as a security for all future indebtedness to accrue from the mortgagor to the mortgagee, all are put upon inquiry as to the state of dealings between the parties and the amount of indebtedness covered by the mortgage, and are duly advised of the rights of the mortgagee to hold the mortgaged property as a security for such indebtedness as may accrue to him.

4. **SAME:** *Purchaser of mortgaged property.*
   A purchaser of mortgaged property takes it *cum onere*, and is a trustee *invitum* of it or its proceeds, and liable to account to the mortgagee.

APPEAL from the Chancery Court of *Washington* County.

Hon. E. STAFFORD, Chancellor.

The facts of the case sufficiently appear in the opinion of the court.

*W. L. Nugent*, for appellants:

1. The appellants are *bona fide* purchasers without notice and for a valuable consideration, and there was no lien existing on the cotton in favor of the appellees; that the mortgage stipulated

for supplies to be furnished during the year, and for a payment by the first day of October. So that any indebtedness incurred after that date could, in no sense of the term, be covered by the security provided. Miller *v.* Whittier, 36 Me., 577 ; St. Andrew's Church *v.* Tompkins, 7 Johns. Ch., 14 ; New Hampshire Bank *v.* Willard, 10 N. H., 210 ; Brinkerhoff *v.* Marvin, 5 Johns. Ch., 326 ; Ter Hoven *v.* Kerns, 2 Barr, 96.

2. That mortgages to secure future advances must be for a sum certain to be advanced, and a day of payment must be fixed ; that in the case at bar, the mortgagees were only bound to the extent of the note for $350, there was no obligation upon them by the contract to do any more, and the conveyance or grant of the crop to secure any other indebtedness which might be incurred by the mortgagors was purely one sided ; it was, in law, no contract, because unsupported by any consideration in fact, and could not operate as against the appellant who bought the cotton in controversy. The obligation to deliver the cotton could only arise upon a corresponding duty to advance money or supplies, and thus appellees could do, or not do, as they pleased. That these mortgages must be recorded so as to apprise third persons of the extent of the lien which may be claimed under it. Even, then they will not prevail over persons acquiring equities prior to the time when the advances were made in fact. 5 Johns. Ch., 320 ; 7 Cranch, 34 ; 13 Me., 254 ; 22 N. Y., 380 ; 2 Saund., 78 ; 30 Barb., 268 ; 15 Ohio, 253 ; 20 Conn., 420 ; 23 id., 123 ; 12 N. J. Eq., 13 ; 24 Pick., 274 ; 36 Penn. St., 170 ; 22 La. An., 285 ; 21 N. J. Eq., 87.

*Frank Johnston,* for appellees, contended :

1. That the mortgage was a valid security for the amount actually advanced, whether the sum to be secured was definitely mentioned in the mortgage or not ; and that appellants had notice of the existence of the mortgage, and cannot claim to be an innocent purchaser without notice. Leeds *v.* Cameron, 3 Sumn., 492; 1 Hill. on Mort., 317 ; McDaniels *v.* Colvin, 16 Vt., 304; Summers & Brannin *v.* Roos & Co., 42 Miss., 778.

2. That whether the mortgagees were under any legal obligation to advance more than $350, cannot affect the question as to the mortgage being an effectual security for the advances actually made ; and if the mortgagees actually advanced supplies and money on the faith of the mortgage, it would be held as a security for such advances.

3. That if the court should construe the mortgage as a security only for the amount of the note, the credits should be applied to that portion of the debt not covered by the mortgage. This would leave a portion of the mortgage debt due, and the decree should be affirmed. Johnson's Appeal, 37 Penn. St., 274 ; 1 Hill on Mort., 327.

CAMPBELL, J., delivered the opinion of the court.

On the 4th of March, 1872, Storms & Bass executed a mortgage to secure Everman & Co., the promissory note of Storms & Bass for $350, payable 1st of October, 1872, with ten per cent. interest from date, and two and a half per cent. for advancing, and as a security for " the prompt payment of all other indebtedness which may be incurred by said parties of the first part (Storms & Bass), or either of them." The condition of the mortgage is, that it shall be void, " if said promissory note ($350) and all other indebtedness of said parties of the first part, or either of them, shall be promptly paid, but upon the failure to so pay said promissory note and other indebtedness, or to perform the agreement hereinafter made, the parties of the second part have full right," etc. The property conveyed by the mortgage is " all the crops of cotton, corn or other agricultural product now being produced, or that may be produced within fifteen months from the date hereof," by the mortgagors or either of them, and the mortgage stipulates for the delivery by the first day of October, 1872, of a sufficiency of said crop of cotton to cover all indebtedness to that date, and that the mortgagors shall gather and prepare for market as soon as the same can be done, the whole crop of cotton which may be produced by them during the ensuing

year, and to deliver the said crop of cotton from time to time, as it is so prepared, to said " mortgagees, at Greenville, Mississippi, to be by them sold or shipped for sale, and the proceeds thereof applied to the payment of the sums due or to become due as aforesaid, the surplus to be paid over to the mortgagors." It is recited in the beginning of the mortgage that Storms & Bass intend to cultivate a certain plantation during the year 1872, and that for the purpose of enabling them to do so, Everman & Co. have agreed to advance to them in plantation supplies and other articles an amount not exceeding $350. This mortgage was properly acknowledged and duly filed for record in Washington county, where the plantation referred to is situated, on the 7th of March, 1872.

Everman & Co., from time to time, during 1872, made advances under the mortgage to the amount of upwards of $900, and received on the mortgage cotton and its proceeds, to the amount of $797.25, leaving a balance due them, on the current dealings, of $173.50. Five bales of cotton, yielding $340.90 net, were received by Everman & Co., early in October, 1872, and the remainder later. Part of the indebtedness of the mortgagors accrued prior to 1st of October, 1872, and part afterwards.

In December, 1872, Storms & Bass sold a bale of the cotton, covered by said mortgage to Witkowski & Witczinski, who paid them cash for it, and Everman & Co., learning the fact, demanded the cotton or its value of such purchasers, which demand being refused, Everman & Co. exhibited this bill to hold them accountable as trustees for the value of said cotton, which had been sold by them. Said purchasers had no actual knowledge, at the time of their purchase of said cotton, of the state of dealings between Storms & Bass and Everman & Co., and at the time of said purchase, Everman & Co. had received cotton sufficient to more than pay them $350, from Storms & Bass.

The foregoing are the facts of this case, as made by the pleadings, and are not varied by the evidence.

The contest in the court below was, and is here, whether the

mortgage was a valid incumbrance on the cotton embraced in its terms as against a purchaser of it without actual notice, for a debt contracted under it by the mortgagors, beyond the sum of $350, the only definite sum stated ·in it.

The evidence shows that the money paid by Witkowski & Witczinski for the bale of cotton purchased by them, was for the most part paid to cotton pickers, who were laborers in making this crop, and entitled to a lien on the cotton, and it is urged that the court shall consider of this as affecting the rights of parties, but the answer to this suggestion is, that there is nothing in the pleadings to which this evidence applies, and therefore no question can arise upon it for our consideration. If there was such an issue between the parties, the fact that the mortgage in this case was executed and filed for record before the date of the law giving laborers a lien would perhaps render the claim of a lien in favor of laborers unavailing as against the mortgage.

Is a mortgage to secure a sum stated, and "all other indebtedness which may be incurred" by the mortgagor to the mortgagee valid as an incumbrance from its date, as against a purchaser of the mortgaged property, for indebtedness incurred under it after the date of the mortgage, and before such purchase?

Is such mortgage a valid incumbrance from its date as against such purchaser for indebtedness incurred under it after such purchase?

We propound both questions, because in this case, while nearly all of the indebtedness of the mortgagors incurred under the mortgage was before the purchase of the cotton by Witkowski & Witczinski, some of it was created afterwards.

There has been much diversity of views between courts and law writers on the question of the validity of mortgages for future advances, and the rights of mortgagees in such mortgages as against purchasers and junior incumbrancers of the mortgaged property. Some have held that a mortgage which does not specify that for which it is given so distinctly as to give definite information on the face of the mortgage, of what it secures, so as to

render it unnecessary for the inquirer to look beyond the mortgage and seek information *aliunde*, is void as against creditors and purchasers. Others have held that a mortgage for future advances is valid as to all advances made under it before notice by the mortgagee of the supervening rights of purchasers or incumbrancers. Others have announced that a mortgage for future advances to be made or liability to be incurred, when duly recorded, is valid as a security for indebtedness incurred under it, in accordance with its terms. There have been suggested modifications of these views, and a distinction has been drawn between mortgages in which the mortgagee is obligated to advance a given sum, and those in which he is not so bound. We decline to follow the devious ways to which we are pointed by conflicting adjudications and suggestions, and prefer to pursue the plain path in which principle directs us, and will declare the rule to be observed in the courts of this state on the subject under consideration, which, strangely enough, has not been heretofore decided in this state. A mortgage to secure future advances, which on its face gives information as to the extent and purpose of the contract, so that a purchaser or junior creditor may, by an inspection of the record, and by ordinary diligence and common prudence, ascertain the extent of the incumbrance, will prevail over the supervening claim of such purchaser or creditor as to all advances made by the mortgagee within the terms of such mortgage, whether made before or after the claim of such purchaser or creditor arose. It is not necessary for a mortgage for future advances to specify any particular or definite sum which it is to secure. It is not necessary for it to be so completely certain as to preclude the necessity of all extraneous inquiry. If it contains enough to show a contract that it is to stand as a security to the mortgagee for such indebtedness as may arise from future dealings between the parties, it is sufficient to put a purchaser or incumbrancer on inquiry, and, if he fails to make it in the proper quarter, he cannot claim protection as a *bona fide* purchaser. The law requires mortgages to be recorded for the protection of creditors

and purchasers.   When recorded, a mortgage is notice of its con-
tents.   If it gives information that it is to stand as security for
all future indebtedness to accrue from the mortgagor to the mort-
gagee, a person examining the record is put upon inquiry as to
the state of dealings between the parties, and the amount of in-
debtedness covered by the mortgage, and is duly advised of the
right of the mortgagee by the terms of the mortgage to hold the
mortgaged property as security to him for such indebtedness as
may accrue to him.   Thus informed, it is the folly of any one to
buy the mortgaged property, or take a mortgage on it or give
credit on it, and, if he does so, his claim must be subordinated to
the paramount right of the senior mortgagee, who in thus secur-
ing himself by mortgage, and filing it for record, as required by
law, has advertised the world of his paramount claim on the
property covered by his mortgage, and is entitled to advance
money and extend credit according to the terms of his contract
thus made with the mortgagor, who cannot complain, for such is
his contract ; and third persons afterwards dealing with him, can-
not be heard to complain, for they are affected with full notice, by
the record, of what has been agreed on by the mortgagor and
mortgagee.

In the case under consideration, the mortgage, which was duly
filed for record, sufficiently informs all persons pursuing it that it
was to cover all indebtedness of the mortgagors to the mortgagees,
beyond the sum of $350, for which the note was given, and was
sufficient to put persons upon inquiry, and an application to the
mortgagees would have resulted in positive information of the
amount for which the mortgage was held.   Robinson v. Williams,
22 N. Y., 380 ; Stoughton v. Pasco, 5 Conn., 442.

The mortgage was valid as security for all the indebtedness of
Storms & Bass, or either of them, and Witkowski & Witczinski,
in purchasing the cotton covered by the mortgage, took it *cum
onere*, and are trustees *invitum* of it or its proceeds, and liable to
account therefor to Everman & Co.

The decree of the chancellor is in accordance with these views,
and is therefore affirmed.