MECHANICS' BANK *v.* FIRST NATIONAL BANK OF McCOMB CITY.

[78 South. 355, Division B.]

1. MORTGAGES. *Priorities.*

Where there were three successive trust deeds at different dates upon the same property, all recorded at the time they were made, the first and third trust deeds being given to the same bank and the second trust deed to another party, the bank holding the first and third trust deeds was not entitled to have the third trust deed take precedence of the second trust deed on the theory that the loan, secured by the third trust deed was in fact but an advance under the first trust deed which in terms secured future advances, where it appeared that both creditors secured by trust deeds had no notice except from the records, and notwithstanding the third trust deed referred to the first, the bank in making the loan secured by the third trust deed not having any agreement either verbal or written that the note secured thereby should be secured by the first trust deed.

2. SAME.

Under the facts in this case the taking of the first and third trust deeds were not at all part of the same business, but wholly separate and distinct agreements, having no possible connection one with the other.

APPEAL from the chancery court of Pike county.
HON. R. W. CUTRER, Chancellor.

Controversy between the Mechanics' Bank and the First National Bank of McComb City and others. From the decree rendered, the former appeal.

The facts are fully stated in the opinion of the court.

*F. H. Lotterhos,* for appellant, and B. M. Holmes.

The Mechanics' Bank had a just title under the first mortgage to subject the property to the payment of the debt which existed at the date of the mortgage, or came into existence later upon its faith, by advances actually made prior to the receipt of actual notice of the subsequent title of the First National Bank. *Shirras et al.* v. *Caig et al.,* 7 Cranch, 34, 52, Law Ed. (2 Ed), page 260.

The opinion of Chief Justice MARSHALL in *Shirras* v. *Caig,* touching this point is so generally approved and cited as to establish it as the rule of law. Revised Edition of Rose's notes at page 483-4, sets forth the approval of this doctrine in *Shirras* v. *Caig,* so comprehensively that it were supererogation to do more than cite the compilation. *Shirras* v. *Caig* in Mississippi, is approved in *Summers & Bannin* v. *A. Ross & Company,* 42 Miss. 777, and *Witczinski* v. *Everman,* 51 Miss. 841, *Tubbeville* v. *Simson,* 94 Miss. 154, and *Wilson* v. *Vaughn,* 61 Miss. 472, seem to recognize this doctrine in this state.

This rule is consistent with the principle that the purchaser of equitable interests purchases at his peril, and acquires the property burdened with every prior equity charged upon it. See *Perkins* v. *Swank,* 43 Miss. 358.

When the first mortgagee obtains his security for present debts and advances to be made, and makes the proper record of it, there is nothing further for him to do—the property thereafter stands charged with all the equities that arise then or thereafter on the faith of that contract; hence it is, that the registration of a second mortgage, without actual notice to the first mortgagee, is no bar to the security for advances thereafter made by the first mortgagee without actual notice. *Sarles* v. *McGee,* 26 Am. St. Rep. 633; *McDaniels* v. *Colvin,* 42 Am. Dec. 512; *Vanorden* v. *Johnson,* 82 Am.

Dec. 254; *Ackerman* v. *Hunsicker,* 39 Am. Rep. 621
(see specially, page 624); *Lynchburg Perpetual B. &
L. Co.* v. *Fellers,* 70 Am. St. Rep. 851.   This does not
conflict with registry laws, for the promise of security
for future advances existed before the second mortgage
was created and the situation is altered by actual notice,
only, because equity would forbid the mortgagors ob-
taining further advances after he had created a con-
dition by which such further advances would injure the
second mortgagee.   Therefore, when the second mort-
gagee gives the first mortgagee actual notice of the new
equity no damage can inure to either mortgagee by
reason of the second incumbrance.

Neither Mr. Furley nor his assignee was a *bona-fide*
purchaser for value without notice, for Owens warned
them, in their deed of trust, of the deed of trust to the
Mechanics' Bank, which provided for the payment of
the notes and advances to be made.   The record shows
that neither made any inquiry as to advances then made,
or thereafter to be made.

Mr. Furley knew that he had taken a second mortgage,
and had given no notice thereof, yet he encouraged
Owens to obtain a further loan from the Mechanics'
Bank, and approached the bank to know if they intended
doing so, to be applied in payment of Owens' debt to
Furley; which course of conduct, and the profitable re-
sult thereof, would estop him to assert the second mort-
gage against the Mechanics' Bank, if he still owned it;
and he cannot free himself from this estoppel by having
speedily transferred his interest to the First National
Bank. Therefore, if it should be held that the note given
to Furley by Owens, and endorsed to the First National
Bank, should be satisfied from the funds before the note,
the proceeds of which were placed on Furley's credit by
the Mechanics' Bank, then the Mechanics' Bank should
be subrogated to the endorsement and decree *in. per-
sonam* thereon, now held by the First National Bank
against Furley.   To hold otherwise, would be to give

Furley the proceeds of Owens' note to Furley, and the proceeds of the last loan to Owens, advanced by the Mechanics' Bank and this notwithstanding, Furley stood silent, when it was his duty to speak. Had he spoken, Lampton would not have made the last advance, and there would be no conflict between the two mortgagees.

Since he did not speak, we submit that this court should speak for him, and put him in just the position he would have been in, had he told Lampton of the second mortgage, as it was his duty in equity to do. *Evans* v. *Forstall,* 58 Miss. 30. In determining Furley's situation, the court will view the matter as though he still owned the mortgage given by Owens. *Union Mortgage & Trust Co.* v. *Peters,* 18 S. W. 500.

It cannot avail appellees to say that appellant is limited to the last deed of trust taken by it, for Mr. Lampton testifies that the last loan was an advance under the first deed of trust, and gives good reason for taking the second deed of trust. Mr. Owens, nor any one else, denies this, and the second deed of trust specifically provides that it is not a cancellation of the former one. The presumption of law is that the second deed of trust taken by the Mechanics' Bank was only as a further security. *Schumpert* v. *Dillard,* 55 Miss. 348.

To contend otherwise, is mere surmise and suppositional argument, without a word of evidence in the record for its support. Such rights as appellees may have were limited in their extent before the second advance to Owens; and therefore if the Mechanics' Bank could have made the second advance prior to actual notice, and been fully protected under its first deed of trust, it is no concern of appellees that Owens gave an additional deed of trust, which provides that it was not a waiver of the first. *Causter* v. *Sallis,* 54 Miss. 449.

We respectfully urge that the trustee should be directed to first pay from the funds, the debt due the Mechanics' Bank, with a reasonable attorneys' fee; or,

in the event that he should be directed to pay the First National Bank first, then that the Mechanics' Bank be subrogated to the endorsement and decree *in personam* to the extent of their last advance to Owens with a reasonable attorneys' fee herein. .

*Justin J. Cassidy,* and *Price & Price,* for appellee.

The Mechanics' Bank treated this second loan as an original transaction, took notes for it due before the notes were due under the first deed of trust, and waived any rights, if any it had, to make advances to Owens under the first trust deed, and never in this deed of trust mentioned the other deed of trust, or that the notes were already secured by the first deed of trust and was intended as additional advances. It must be borne in mind that this was not a renewal, but an independent loan, and no advances were made under it.

In this case the Mechanics' Bank made its election to take new security, as it did, and thereby waived its rights, if any it had, to make advances under the deed of trust. It must be borne in mind that the advances here spoken of as future advances, were not made until after the First National Bank got possession of Owens' deed of trust and such advances were made after said deed of trust was put on record, and not as advances, but as a new contract.

In *Hilliard* v. *Cage,* 46 Miss. 309, this court, citing the general rule in "Hill on Mortgages," 318, held, that it is entirely legitimate to give a mortgage for some certain sum named in a deed when that sum is intended to cover future advances, and the amount named in the security is valid as to third persons but not beyond that amount.

Likewise in *S. & V.* v. *Ross,* 42 Miss. 779, the court in citing a New York case, which held that a judgment by agreement securing future advances upon the amount then actually due is valid.

Judge Shackleford held, that the limitation to the doctrine would be, that where a subsequent judgment or mortgage intervened, further advances after that period would not be covered, and this case is cited approvingly in the text, 19 Vol. Ruling Case Law, 429, where it is said, the record of a mortgage to secure future advances is notice to all subsequent encumbrances as to advances made before their encumbrances, and in the same text this authority lays down the rule, that the greater array of authorities is found on the side of the doctrine that advances made after notice of subsequent liens or encumbrances does not have priority over such liens or encumbrances.

The intention of the parties is gathered from their written declarations, and the clear intent of the parties will always control, and is a question of fact for the court or jury, and in this case the court heard all the facts and concluded that the second money loaned Owens by the Mechanics' Bank was not made under the first mortgage but, was an independent transaction under the second contract.

In the condition of this record, and deeds of trust, the Mechanics' Bank cannot be heard to say, that it advanced the last loan under its first deed of trust, because the entire written record is otherwise, and as said by this court in one of its decisions, one cannot make white black by swearing to it.

This is not a case like the cases cited by counsel for appellant in his brief, where further advances are provided for and the party is under obligations to make them. In such cases the grantor expects and contracts for further advances, and the grantee obligates himself to furnish them and he cannot escape doing so without becoming liable to the grantor for damages for such failure.

There is nothing in the trust deed from Owens to the Mechanics' Bank to indicate there was any promise

or any intention to make any additional loan or advancement to Owens. It does not lay the usual predicate found in such instruments, that either party expected or could demand any further advances and as a matter of fact it was not the bank's intention to make any further advances under the terms of the deed of trust, and none were made under it as a matter of fact.

The usual clause for future advances is, "that whereas the party of the first part expects the party of the second part to advance him supplies and merchandise during the year at such prices as may be agreed upon, and the first party agrees to secure the payment of said indebtedness, as also any further amounts that may be advanced and not mentioned herein, etc."

The doctrine of future advances covered by the authorities cited by counsel does not arise in this case, because none have been made. Banks are not doing an advancing business, they are money lenders.

In the cases cited, the question was, either the validity of future advances promised in the written instrument, or where they had already been made under the deed or mortgage, where the amount was named or unnamed, certain or uncertain, and what effect such transactions would have as between the parties; and secondly, what effect as to third parties, but where no advances were made, and none were made before our deed of trust was taken, and none made after it, then the only question here is, whether or not each deed of trust was taken and intended as a separate and distinct transaction within itself, and this was submitted to the chancellor upon the facts, and each deed of trust was taken independently and as if none other existed each was given for a certain sum named, and no other amount has been loaned since the writing of the deed.

As each deed of trust was a separate and finished transaction and so undisputably appearing on the face

of the instrument, and so treated and regarded by the parties, each regularly filed, they each take effect under our registration laws as of the filing date. This taken in connection with the general custom of banks on the question of taking security for all loans and making each a finished transaction, together with the fact that the parties really so treated such transaction, and the making of the last deed due long before the first debt of the Mechanics' Bank, evidently expecting to make the money, and did make a hundred dollars out of the new business of Owens, that he had purchased of Furley, were sufficient facts for the chancellor to find that the First National Bank was entitled to the money in the hands of the trustee over the Mechanics' Bank. A citation of authorities of the force of the chancellor's finding upon the facts is a useless waste of time.

Unless the money loaned by the Mechanics' Bank when the second deed of trust was taken is secured by the first deed of trust taken by this bank this case must be affirmed. On the face of the papers each loan was a separate and independent transaction, so conceding for the sake of argument, but not otherwise. That the bank had the right to make future advances under the security of its further deed of trust, it does not follow that the making of the second loan, of itself, proves that it was an advancement made under and intended to be secured by first deed of trust, this being a question of fact that must be proved by the circumstances attending the transaction and not by what the bank's officers may have afterwards declared their intention to have been. 40 Cyc., 263.

The burden is on the bank to show that the second loan it made was an advancement under the first deed of trust. Taking the second deed of trust raises a presumption that any security, if there was any, given by the first deed of trust to secure the second loan was waived, and this presumption can only be overcome by proof of

the most cogent and irresistible circumstances indicating the contrary.

For sound reasoning in support of this position, we commend the opinion of this court in *Myers* v. *Estell,* 48 Miss. 408.

When the bank took its first deed of trust it acquired a lien to secure the amount then loaned. The provision in the second deed of trust that it did not cancel any lien then held by the bank, only preserved the lien existing prior to taking the second deed of trust, but did not provide nor intend that the bank might not, by taking the second deed of trust waive any right it might have to make advances under the first or tend to establish the fact that the second loan was an advancement. The chancellor found as a fact that the bank had not met the burden. This finding was manifestly correct and will not be disturbed.

In the Shirras Case, the mortgage was to secure the payment of an amount certain therein stated. Reviewing, further, the case cited by counsel for appellant, we find that in *Witczinski* v. *Everman,* 51 Miss. 841, the deed of trust recited that the mortgagee intended to furnish the mortgagor supplies for the year, while in *Summers & Bannin* v. *A. Roos & Co.,* 42 Miss. 777, future advances were contemplated and the amount stated. The Witczinski case, so far as applicable, was approved in *Tubbeville* v. *Simon,* 94 Miss. 154. But the Witczinski case seems to be mainly relied on by appellant. A careful reading of this case, keeping in mind the rule that what was therein said by the court should be considered with the facts of the case then under review, will show that the propositions involved in the present case were not before the court and not decided by it. In the Witczinski case the deed of trust stated that the mortgagee had agreed to furnish the mortgagor supplies during the year. It is true that the court said, p. 846,

of opinion: "If it (the mortgage) contains enough to show a contract, that it is to stand as a security to the mortgagee for such indebtedness as may arise from future dealings between the parties, it is sufficient to put a purchaser or incumbrancer on inquiry." The court was not then deciding a case where there was no agreement to make future advances and evidently did not have such case in mind, because the court, just four years prior in *Hilliard* v. *Cagle,* 46 Miss. 309, said: "It is entirely legitimate to give a mortgage for a sum certain named in the deed when that sum is intended to cover future advances, to the amount named, the security is valid as to third parties, but not beyond it." The language quoted from the Witczinski case can, therefore, very properly be regarded as *dictum.* Counsel for appellant cites a few cases in support of his view that the holder of the Furley paper is not entitled to priority over the bank's second deed of trust, because Furley did not tell the bank he was going to take his deed of trust. As holding the contrary view, we cite: *Fuller* v. *Griffith,* 91 Iowa, 632; *Parler* v. *Jacoby,* 3 Grant Cases 300. But as being same in point as we see it, we cite the following: *Thompkins* v. *Ft. S. & L. R. R.,* 15 Fed. 6.

We respectfully submit that the chancellor's finding on the facts and construction of the law as shown by the decree rendered were eminently correct and that this case should be affirmed.

Stevens, J., delivered the opinion of the court.

This case involves controversy as to priority of liens given by certain deeds of trust covering certain real estate in McComb City. One Owens and wife executed four deeds of trust on the same property. The first deed of trust to McColgan Building & Loan Association is recognized by all parties to this litigation as a prior lien; there is an agreement to pay the balance due on

this first lien, and the rights, therefore, of the building and loan association need not be further noticed. The three deeds of trust which occasion the present controversy are as follows: On May 25, 1915, Owens and wife executed to appellant, Mechanics' Bank, a deed of trust for two hundred and seventeen dollars and eighty cents, due and payable in May, 1916. On September 30, 1915, Owens and wife executed upon the same property a deed of trust to one L. T. Furley to secure the sum of eight hundred and forty-nine dollars and ninety-five cents, being a part of the purchase money for a certain stock of goods, wares, merchandise, and fixtures purchased by Owens from Furley. A promissory note was given for the eight hundred and forty-nine dollars and ninety-five cents indorsed by one Gammill, and this note and deed of trust securing the same were assigned in writing and delivered to appellee, the First National Bank of McComb City, and the trust deed was duly recorded the following day in the clerk's office. On the 2d day of October, 1915, Owens and wife executed another deed to trust to the Mechanics' Bank for three hundred and eighty-nine dollars evidenced by two notes, one for one hundred dollars, due and payable December 2, 1915, and one for two hundred and eighty-nine dollars, due April 2, 1916. The last deed of trust covered the same real estate, and was recorded in the clerk's office October 7, 1915. Pending the controversy between the parties, the trustee under the first deed of trust to the Mechanics' Bank by agreement of all parties sold the property, and the court in the present case directed how the money should be applied. The chancellor decreed that after paying the balance due the building and loan association the trustee should pay, first, the note of two hundred and seventeen dollars and eighty cents, with interest, costs, and trustee's fees secured by the first deed of trust to the Mechanics' Bank; secondly,

that the indebtedness due the appellee First National Bank should be paid; and, admittedly, the funds are insufficient to go further and discharge the second deed of trust owned by appellant, the Mechanics' Bank. Without setting out the pleadings and facts in detail, the main contention made at the bar by counsel for appellant is that under the terms and provisions of the deed of trust of May 25, 1915, to the Mechanics' Bank, future advances were secured; that the advancement of three hundred and eighty-nine dollars by the Mechanics' Bank to Owens October 2, 1915, was made under the terms of the first deed of trust, and in equity should be considered secured by the first deed of trust, notwithstanding the fact that the bank took a new deed of trust at the time this second loan was made. There is no serious contention that any of the parties had any notice except that given by the records, and the proof shows that the officers of both banks acted in the utmost good faith. The first deed of trust to Mechanics' Bank contains the following provisions:

"That whereas the said parties of the first part are indebted to party of the third part in the sum of two hundred and seventeen dollars and eighty cents on note of even date; and whereas, the said parties of the first part have agreed to secure the payment of said indebtedness as also any further amounts that may be advanced and not mentioned herein, and any and all indebtedness that is or may become due and all renewals or extensions of notes evidencing the amounts or amount secured herein;" and "in trust, however, that if the parties of the first part shall on or before May 29, 1916, pay what may be due said party of the third part for money loaned and advanced and all other indebtedness in this deed of trust," etc.

The second deed of trust given Mechanics' Bank has, among other provisions, the following clause:

"This deed of trust does not cancel any lien or trust deed held by the third party against the first party, but same remains in full force and effect."

When Furley accepted his deed of trust from Owens and wife dated September 30, 1915, and had the same recorded the following day, the records in the chancery clerk's office of course did not disclose the existence of any indebtedness to appellant, the Mechanics' Bank, except the note of two hundred and seventeen dollars and eighty cents, secured by deed of trust executed in May, 1915, payable in May, 1916. At that time no further advances had been made. In addition to the promissory note given Furley as a part of the purchase price of the stock of goods, it appears that Owens was to make a cash payment, and he made application to the Mechanics' Bank for three hundred and seventy-five dollars as a part of the cash payment to Furley for said stock. Furley did not know that the Mechanics' Bank intended to take any other deed of trust on the property involved, and the bank did not know that Furley intended to take himself a deed of trust on the same property. These are the facts as found by the chancellor, and the proof justifies the conclusion which he reached. The First National Bank, in taking an assignment of the Furley deed of trust, did not know that the Mechanics' Bank was anticipating making a further loan on the security mentioned, and under the facts as found by the chancellor the First National Bank accepted an assignment of this deed of trust and note without any knowledge except that disclosed by the records. The question is, then, under the records and the notice imparted thereby, Who has priority? We conclude that appellant is not in position to treat the second loan of three hundred and eighty-nine dollars to Owens as an advancement under its first deed of trust. Appellant in making this second loan took two notes, both of which were to mature before the due date of the indebtedness secured by its

117 Miss.—29

first deed of trust. In making the second loan appellant did not rest its rights upon an agreement that the notes should be secured by the first deed of trust. There was no agreement to this effect, either written or verbal. In saying this, we are mindful of the testimony of the active vice-president and manager of the Mechanics' Bank to the effect that in making the second loan he regarded it as an advancement under the bank's first lien. But the actual agreement of the parties made at the time must control. Appellant in fact took a new deed of trust, a new contract, expressly securing the second loan. This second loan was not a renewal of any prior indebtedness, but an independent transaction wholly unrelated to the first. There was no agreement at the time the first deed of trust was executed that appellant would extend further accomodations to Mr. Owens, and no obligation on the part of the bank to make any further advances at all. In fact no one anticipated or could possibly know in advance that Owens would apply for the three hundred and seventy-five dollar loan. In securing this second loan Owens gave and the bank accepted a new contract, and this contract speaks for itself. Appellant in taking this new contract did not bring forward the indebtedness secured by this first trust deed. The two transactions are not at all part of the same business, but wholly separate and distinct agreements, having no possible connection one with the other. It cannot be said, therefore, that appellant made any additional advances under its first deed of trust. Such contention is not supported by the facts, and especially by the acts and conduct of the parties. In fact the manager of appellant bank testified that if he had known Owens had given a deed of trust to Furley he would not have made the second loan at all. Under this view of the case it is unnecessary for us to notice the doctrine of future advances announced in *Shirras et al.* v. *Caig et al.,* 7 Cranch, 34, 3 L. Ed, 260, *Witczinski* v. *Everman,* 51

Miss. 841, and other cases relied on by counsel for ap-. pèllant. Enforcing our registry laws as written, we see no error in the decree appealed from.

*Affirmed.*