John P. McKay, Jr. and Rosemary L. McKay *v*. CAPITAL RESOURCES COMPANY, LTD.

96-200                                                        940 S.W.2d 869

Supreme Court of Arkansas
Opinion delivered March 24, 1997

[Petition for rehearing denied April 28, 1997.*]

---

\* Special Justices MIKE HUCKABAY and PAUL B. GEAN join. CORBIN and BROWN, JJ., not participating.

*Hilburn, Calhoon, Harper, Pruniski & Calhoon, Ltd.*, by: *John E. Pruniski* and *Dorcy Kyle Corbin*, and *The Harmon Law Firm, P.A.*, by: *John T. Harmon*, for appellants.

TOM GLAZE, Justice. In 1987, appellants John and Rosemary McKay, Jr., purchased a condominium unit in Hot Springs. They financed the purchase through Landmark Savings Bank, F.S.B., by a promissory note secured by a mortgage on the unit. In 1990, Landmark Savings was placed into receivership with the Resolution Trust Corporation (RTC), and in 1993, the RTC assigned the McKay note and mortgage to Magnolia Federal Bank for Savings of Hattiesburg, Mississippi.

Subsequently, the McKays defaulted on the note, and on April 12, 1994, Magnolia Federal filed a complaint to foreclose on the McKay mortgage, but during the pendency of that foreclosure suit, on June 29, 1995, Magnolia Federal assigned the McKay note and mortgage to appellee Capital Resources Company, Ltd. Capital Resources in turn filed a petition requesting it be substituted for Magnolia Federal as party-plaintiff in the foreclosure action. An order granting Capital Resources' motion was entered on September 25, 1995.

At the conclusion of the trial held on September 27, 1995, the McKays moved to dismiss the foreclosure action because Capital Resources failed to produce the original promissory note or account for the note's absence. The chancellor denied McKay's motion, and on October 19, he entered a foreclosure decree in Capital Resources' favor, awarding a judgment against the McKays in the amount of $117,387.06. The McKays appeal from the foreclosure decree and denial of their motion to dismiss.

The McKays challenge the trial court's ruling that Capital Resources was not required to produce the original promissory note at trial, but instead could prove its case by introducing only a copy of the note. As argued below, they contend that under the Uniform Commercial Code, Capital Resources was required either to produce the original note or to explain its absence. The McKays maintain that without production of the original note, Capital Resources cannot prove its status as a holder entitled to sue on the note. They further submit that Capital Resources' failure to produce the original note subjects them to double liability should a subsequent holder of the original note appear.

The McKays point out that Arkansas case law dating as far back as 1842 has required a creditor to prove the debt by admitting the original promissory note into evidence. *See Beebe v. Real Estate Bank*, 4 Ark. 124 (1842) (profert of a promissory note is required by statutes placing promissory notes on the same footing and of equal dignity with instruments under seal). Furthermore, they cite *Vandergriff v. Vandergriff*, 211 Ark. 848, 202 S.W.2d 967 (1947), where this court held there can be no judgment on a note when it is not introduced into evidence and where the note's absence is not explained. This court has also held that secondary evidence of the contents of a note is inadmissible when the original is within the control or custody of the one seeking to enforce it. *Chaviers v. Simmons*, 256 Ark. 731, 510 S.W.2d 301 (1974).

Article 3 of the UCC, first enacted in 1961 and replaced in 1991, governs the treatment of negotiable instruments. Ark. Code Ann. §§ 4-3-101—605 (Repl. 1991). Here, because their promissory note is a negotiable instrument as defined by § 4-3-104(a), the McKays contend, and we agree, that Capital Resources was obligated to satisfy the UCC requirements for negotiable instruments. We turn to those UCC requirements applicable here. Under § 4-3-310(b)(3), an obligee may enforce either the note or the debt. However, when the note is transferred to a third party (as in the present case), the only right that survives is the right to enforce the note. § 4-3-310(b)(4). Also important here is Code provision § 4-3-301, which provides that a person may be able to enforce the note even though that person is not the owner of the instrument or is in wrongful possession of the note.

In applying the foregoing Code requirements to the facts before us, the McKay note and mortgage were purportedly transferred ultimately to Capital Resources, a third party. And while Capital Resources introduced into evidence the Garland County Circuit Court Clerk's certification that the mortgage and the assignments were true copies of the originals, Capital Resources submitted only a photocopy of the promissory note. The McKays maintain that the record is void of any evidence that either Magnolia Federal or Capital Resources were ever holders of the original note, and that being so, the McKays are left with the possibility of the actual holder enforcing the note against them later.

At this point, we underscore that Capital Resources, even without possessing the original note, could have under certain circumstances prevailed in this action against the McKays. For example, under § 4-3-301, a person not in possession of a note may be entitled to enforce the instrument pursuant to § 4-3-309. Under § 4-3-309, a lost, destroyed, or stolen instrument may be enforced, if the following is shown:

> (a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

> (b) A person seeking enforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, § 4-3-308 applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.

In the instant case, Capital Resources apparently never possessed McKays' original note as provided in § 4-3-309(a)(i).

But even if it had, Capital Resources was required to have proven all three factors specified in § 4-3-309(a). Consequently, Capital Resources could not enforce the original note's terms by the use of a copy. Even if all three requirements in § 4-3-309(a) had been proven, the trial court was still obligated to ensure that Capital Resources provided adequate protection to the McKays from any future claim, and this too was not done. *See Resolution Trust Corp. v. Love*, 36 F.3d 972 (10th Cir. 1994) (RTC agreed to indemnify the debtor against further liability on the lost note).

Capital Resources also urges that the trial court was correct in admitting the copy of the note as an exception under the best evidence rule. Ark. R. Evid. 1002 provides that the original is required to prove the contents of a document. However, under Rule 1003, a duplicate is admissible to the same extent as an original, unless a question of its authenticity is raised or it would be unfair to admit the duplicate in lieu of the original. Capital Resources contends the Rules of Evidence supersede the requirements of the UCC. But we find this argument without merit.

■ First, as previously discussed, we mention the unfairness in these circumstances that, if a duplicate was allowed in place of the original note, the McKays could later be subjected to double liability if the actual holder of the note appeared. Next, we add that the Rules of Evidence are rules of the court involving legal proceedings, while the UCC is composed of statutes of law that established the rights and liabilities of persons. Again, as previously discussed, Capital Resources, as an assignee of the McKays' note, could not sue on the underlying debt the McKays owed to Landmark Savings. For Capital Resources to have prevailed in enforcing the McKays' note, it was required either to produce the original or satisfy the requirements for a lost negotiable instrument under § 4-3-309(a) and (b). Because Capital failed to do either, we must reverse and remand.

CORBIN and BROWN, JJ., not participating.

Special Justices MICHAEL D. HUCKABAY and PAUL B. GEAN join this opinion.